**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rogelio LARA, Defendant-Appellant.**

No. 80–5355
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit B

March 5, 1981.

Miguel Del Aguila, Lawrence Besser, Miami, Fla., for defendant-appellant.

Atlee W. Wampler, III, U. S. Atty., Sonia Escobio O'Donnell, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL, FAY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Rogelio Lara appeals his conviction after a nonjury trial of possession of cocaine with intent to distribute. 21 U.S.C.A. § 841(a)(1). Lara moved to suppress the introduction at trial of cocaine seized from a vinyl tote bag he was carrying when he arrived at Miami International Airport. After a hearing, the magistrate recommended that the motion to suppress be denied because Lara had abandoned the vinyl tote bag. After a hearing, the district court adopted the magistrate's findings and recommendation and made an additional finding. Lara waived jury trial and was tried on stipulated facts. The question we must decide is whether and when a seizure took place, as this will determine whether the abandonment was the result of illegal police activity. Finding the record to be inadequately developed, we remand for further findings.

## FACTS

The hearing before the magistrate focused on the initial encounter between police officers and Lara and whether Lara's actions and statements were voluntary. The magistrate made the following findings of fact:

1. On October 15, 1979, William Johnson, a police officer with the Dade County Public Safety Department assigned to the Airport Narcotics Unit at the Miami International airport since November 1977, observed the defendant, Rogelio Lara, purchase an airline ticket for cash at a National Airlines ticket counter at about 3:15 p. m.

2. At such time, Mr. Lara was carrying a leisure jacket over his arm, a fold-up suit bag and a brown colored small vinyl leather tote bag.

3. Mr. Lara was first in line—no one else was in the line.

4. Mr. Lara checked his fold-up suit bag with the ticket agent and thereupon proceeded towards Concourse F, a departure concourse for National Airlines.

5. Before getting to the Concourse, Rogelio Lara, walked over to his left and took a seat in the public seating area up against the rear of an elevator shaft in the center of the airport.[1]

6. Mr. Lara is 38 years of age. From his appearance in Court, there is nothing sinister-looking about him.

7. Officer Johnson and his partner, Detective Everett Titus, followed Lara to where he was sitting. Johnson identified himself as a police officer, asked if he minded talking to the officer, and was thereupon asked to see his airline ticket.

8. The ticket was a one-way ticket to Washington, D.C., in the name of B. Garcia.

9. Officer Johnson then asked Lara for identification and as Lara was patting himself as if to look for his wallet, he was asked, "What's your real name?", to which he responded, "Rogelio Lara".

10. Lara was again asked if he minded talking to the police officer and when asked where his identification was, said that, "it must be in the car . . . she brought me in the Mercedes".

11. Another police officer, Detective Milan Pilat, walked up at that point and said that he had seen Lara exit from a station wagon occupied by a man, a woman and two children.[2]

12. Lara was then asked if he would give permission to search his tote bag, which was sitting next to his feet at the chair he was then standing in front of.

13. Lara stated: "I don't have a bag, that's not my bag".

14. Officer Johnson then told Lara that he "would like Mr. Lara to come downstairs with my partner and myself."

15. Officer Johnson testified prior to that time Lara was free to leave.

Report and Recommendations, pp. 1–2 (transcript references omitted).

Downstairs, in a baggage handling room, a search of Lara produced a quantity of marijuana, which the district court suppressed as the result of an illegal arrest, a ruling the government does not appeal. The vinyl tote bag was placed among other bags, and a dog, trained as a narcotics sniffer, indicated that the bag contained a narcotic. A search warrant for the tote bag was then obtained. The search of the tote bag produced the cocaine in question and a wallet containing Lara's identification.

On the basis of these findings of fact, the magistrate made numerous conclusions of law. The magistrate concluded that because of a lack of reasonable suspicion, Officer Johnson had no right to interrogate Lara initially. The magistrate did not expressly find that a seizure had occurred, but simply assumed the interrogation was an investigatory stop within *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),

---

1. Officer Johnson testified that the seat chosen by Lara was the most private seat to be out of sight in the concourse area.

2. The only evidence offered by Lara contradicting the magistrate's finding was his testimony that he was approached initially by all three officers.

and applied the reasonable suspicion standard of that case. Despite the fact that at the time of the hearing this court had decided *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), *cert. denied* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980), the magistrate failed to apply the test announced there concerning investigatory stops. The magistrate held that when Lara was taken to the baggage room, the arrest was complete, and was illegal. The magistrate further held that any statement made by Lara was not voluntarily given, but was the result of a show of authority and intimidation. Factors the magistrate considered in making this holding were that two, and at times three, officers were standing in front of Lara, they flashed their badge at him, no *Miranda*[3] warnings were given and the officers never told Lara he did not have to answer their questions. Despite finding that all statements by Lara were involuntary, the magistrate concluded that the seizure and search of the tote bag was legal because it was abandoned by Lara. The magistrate held that while Lara's statement abandoning the tote bag could arguably be suppressed as an admission, it could not be suppressed as a disclaimer of ownership, citing *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc).

After a hearing on the magistrate's Report and Recommendation, the district court adopted the report in its entirety and approved the recommendations.[4] The district court made an additional finding that there was no nexus between the illegal arrest of Lara and the subsequent search of his person or of the tote bag.

ISSUE

Before reaching the significant issue in this case—whether and when a seizure of Lara occurred—we must dispose of one theory relied upon by the district court. In discussing this theory, we assume arguendo—as the district court implicitly found—that the initial encounter with Lara was an illegal seizure. The district court found that there was no nexus between the illegal initial encounter of Lara and the subsequent search of his person and of his tote bag. We think this finding is clearly erroneous. If the police acted illegally in their initial encounter with Lara, then it is clear that the subsequent searches of his person and of his tote bag were all prompted by information gathered during such illegal activity. The link between any illegal activity and the discovery of the cocaine is too direct and proximate to permit a finding of attenuation from such illegality to allow admission of the discovered cocaine. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We note that the government on this appeal does not attempt to justify admission of the cocaine on the theory that there was no nexus between any illegal activity and the search, nor does the government argue that any taint was purged or dissipated at the time of the search of the tote bag.[5]

The government argues only that there had been no seizure of Lara at the time he abandoned the tote bag, and thus there had been no illegal police activity at that time.[6] Both parties focus on this issue as the only

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Because the district court adopted the magistrate's Report and Recommendation in its entirety, we will often refer to the magistrate's findings and conclusions of law as being those of the district court.

5. We note also that the government does not attempt to sustain the judgment below on a theory that Lara's abandonment was sufficient to eliminate the taint of an illegal seizure. *See United States v. Beck*, 602 F.2d 726, 729 (5th Cir. 1979). The government has argued only that there was no seizure of Lara at the time he abandoned the tote bag.

6. *See United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc); and *United States v. Canady*, 615 F.2d 694 (5th Cir. 1980), where the abandonment occurred during a legal and proper airport search. 615 F.2d at 694 n.3.

Nor does the government argue a theory that, even if there had been a seizure sometime before Lara abandoned the bag, the officers had reasonable suspicion at the time of the seizure so that their actions would be legal. Accordingly, we express no opinion with respect to such a theory. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Reid v. Georgia*, ── U.S. ── ──, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *United States v. Pulvano*, 629 F.2d 1151 (5th

issue on appeal. Accordingly, we focus only on whether there was a seizure at the time Lara stated the tote bag was not his.

## LAW

The recent decision by the Supreme Court in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), has facts similar to those in the instant case. There Justice Stewart, joined by Justice Rehnquist, voiced his belief that there was no seizure when two nonuniformed DEA agents approached the defendant in the concourse of an airport, identified themselves as federal agents, and asked to see her identification and airline ticket. The defendant gave the agents her driver's license which had a name different from that on the ticket. The agents then asked the defendant why she was traveling with a different name and how long she had been in California, the origin of her flight. After the defendant answered these questions, the agents asked her to accompany them to their DEA office. Justices Stewart and Rehnquist believed the proper test for determining whether a seizure had occurred was whether in view of all the circumstances surrounding the incident, a reasonable person would believe he was not free to leave. 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. Applying this test, they found no seizure since the encounter was in a public concourse, the agents wore no uniforms, displayed no weapons, and did not summon the defendant to their presence, but instead approached the defendant and requested, but did not demand, to see the defendant's identification. Since only Justices Stewart and Rehnquist addressed the seizure issue, *Mendenhall* provides no binding precedent on the issue.[7]

Although *Mendenhall* gave no binding test for what constitutes a seizure, this court in *United States v. Robinson,* 625 F.2d 1211 (5th Cir. 1979) recognized that this circuit, in *United States v. Elmore, supra,* had already enunciated the same test adopted by Justices Stewart and Rehnquist—*i. e.,* whether, under the totality of the circumstances, a reasonable person would have thought he was not free to leave.[8] *See also United States v. Pulvano,* 629 F.2d 1151 (5th Cir. 1980); *United States v. Fry,* 622 F.2d 1218 (5th Cir. 1980). *Elmore* amplifies the test by noting that the determination of whether such freedom of choice exists involves a "refined judgment," especially when no force, physical restraint, or blatant show of authority is involved. 595 F.2d at 1041–42. This judgment may involve looking at matters as nebulous as the tone of an officer's question. 595 F.2d at 1042.

We found in *Elmore* that there was no seizure up until the time that a DEA agent carried the defendant's airline ticket away to a counter. The defendant there was approached by two DEA agents, one of whom identified himself as a federal narcotics agent. When asked to see the defendant's airline ticket, the defendant gave the ticket to the agents. Because the ticket bore the name "E. Gray," the agent asked, "Mr. Gray?", to which the defendant replied in the affirmative. When asked to provide additional identification, the defendant volunteered that his brother-in-law, E. Gray, had purchased the ticket in advance. The defendant then gave the agents a driver's license with his proper name. Because one agent suspected something was wrong with the ticket, he took it to the counter for further investigation. The *Elmore* court

---

Cir. 1980); *United States v. Robinson,* 625 F.2d 1211 (5th Cir. 1980); *United States v. Fry,* 622 F.2d 1218 (5th Cir. 1980); *United States v. Elmore, supra; United States v. Ballard,* 573 F.2d 913 (5th Cir. 1978).

7. Justice Powell, joined by Justice Blackmun and Chief Justice Burger, did not address the question of whether there had been a seizure of the defendant in *Mendenhall,* but did not necessarily disagree with Justice Stewart's opinion. Justice Powell noted that "the question of

whether the respondent in this case reasonably could have thought she was free to walk away when asked by two government agents for her driver's license and ticket is extremely close." 100 S.Ct. at 1880, n. 1.

8. The *Elmore* court derived this test from *United States v. Wylie,* 186 U.S.App.D.C. 231, 569 F.2d 62 (1977), *cert. denied* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978).

held there was a seizure at the time the ticket was removed from the vicinity of the defendant.

Two other decisions by this circuit, while not expressly stating the test found in *Robinson* and *Elmore*, have been concerned as to whether the suspects' actions when approached by police were voluntary or the result of a show of authority. *United States v. Bowles*, 625 F.2d 526 (5th Cir. 1980); *United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980).

In *Bowles*, we found that there was a seizure when a detective passed an individual who was walking down an airport concourse, held out his credentials, and turned to face the defendant, blocking his path and forcing him to stop. We analogized the situation there to a traffic stop by means of flashing lights or sirens, and found that the individual's movement had been restrained.[9]

*United States v. Pulvano, supra,* is quite similar to *Elmore.* Two DEA agents waited at an airport locker until a suspect approached the locker to retrieve a suitcase. The agents identified themselves and asked the suspect if he would answer a few questions. At the agents' request, the suspect gave them his ticket. The agents asked for identification, and when the suspect's driver's license revealed a different name, they asked him why he was traveling under an incorrect name. The agents then asked if the suspect had any luggage, to which the suspect answered negatively. When the agents confronted the suspect with the information that he had been been seen with luggage, the suspect gave the agents consent to open the locker. It was only at the point that the agents took the suitcase and asked the suspect to accompany them to an office that a seizure took place.

Although *United States v. Robinson, supra,* adopted the objective test of *Mendenhall* (Justices Stewart and Rehnquist) and *Elmore* to determine when seizures occur, no definite conclusion was reached in that case on the seizure issue. There the defendant was approached by a single DEA agent in an airport who identified himself as a federal agent, displayed his credentials, and asked whether he could see the defendant's airline ticket. The defendant gave the agent his ticket, and produced a driver's license with a different name. The defendant denied that he was carrying narcotics and consented to the agent's request that he permit a brief search of his person and his briefcase. Because the district court in *Robinson* found that there was a seizure on the basis of a pre-*Elmore* test, this court remanded for an evidentiary hearing applying the proper test. In remanding, we ordered the district court to consider the fact, if true, that the agent told the defendant he believed the defendant to be carrying narcotics.

█ Reviewing the facts and law of the above cases, we conclude that the district court in the instant case did not apply the proper standard in determining the legality of the police encounter with Lara. It is clear the district court was not aware of the test enunciated in *Elmore*. Lara could argue that the district court necessarily found there was an illegal seizure from the initial contact because the district court

9. The *Bowles* court noted that even if the facts in that case were virtually the same as those in *Elmore*, the *Elmore* holding had been seriously undercut by *United States v. Santora*, 619 F.2d 1052 (5th Cir.), *cert. denied* —— U.S. ——, 101 S.Ct. 360, 66 L.Ed.2d 219 (1980). *Bowles*, 625 F.2d at 532, n. 5. We are not as convinced as the *Bowles* panel that *Santora* undercuts *Elmore*. First, it is not clear that the seizure issue was even litigated in *Santora* since *Elmore* is not mentioned and the panel in *Santora* in one sentence in a paragraph beginning a discussion of reasonable suspicion merely stated there was "no doubt" the confrontation there was a "stop" within *Terry v. Ohio*. Second, the facts in *Santora* regarding the initial confrontation are ill-developed but indicate that the suspects were approached while seated at a lounge, that one suspect produced a license at the request of the officers, and that the suspects emptied their pockets at the request of the officers. 619 F.2d at 1054. This last fact is clearly significant in determining whether a person reasonably could believe he was free to walk away, and is arguably as restraining as taking a passenger's ticket from him. Moreover, *United States v. Robinson, supra,* and *United States v. Pulvano, supra,* both confirm that the *Elmore* case remains good law in this circuit.

suppressed all of Lara's statements as involuntary. It is clear, however, that the district court relied on factors, some of which are proper and some of which are not, in finding Lara's statements involuntary. First, the district court assumed that any encounter and interrogation of a citizen by a policeman which is not premised on reasonable suspicion is illegal. That this is an erroneous assumption is now well established in this circuit. *United States v. Pulvano, supra; United States v. Robinson, supra; United States v. Elmore, supra.* The Supreme Court in *Terry* was careful to point out:

> [O]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.

392 U.S. at 19 n.16, 88 S.Ct. at 1879 n.16, 20 L.Ed.2d at 905, n.16; *see also Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Second, the district court apparently considered as inherently coercive the fact that the officers gave Lara no *Miranda* warning or other advice that he need not answer their questions. Although it is obvious that giving the *Miranda* warning or other express advice that the individual need not answer or is free to leave might tend to support a finding of no seizure, it is clear that a police-citizen encounter which is outside the Fourth Amendment need not be initiated with such warnings or advice.[10] *United States v. Pulvano, supra; United States v. Robinson, supra; United States v. Elmore, supra. See also United States v. Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1878, 64 L.Ed.2d at 510; *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct.

2041, 36 L.Ed.2d 854 (1973). Third, the district court found there was a show of authority and intimidation resulting in involuntariness, but did not elaborate on what this show was. The record indicates only that the officers identified themselves as policemen when they approached Lara. While a show of authority and intimidation is clearly relevant and important in determining whether a person reasonably could believe he was not free to leave, the present record on appeal is not sufficiently clear to enable us to conclude that Lara was seized when initially approached.

■ Because the district court relied on improper as well as proper factors in evaluating the legality of the police conduct in their interrogation of Lara, and because the record does not develop sufficiently the facts relevant to the seizure issue, we prefer for the district court to determine in the first instance whether the encounter with Lara was sufficient to cause a reasonable person to believe he was not free to go. The district court is best able to determine whether and when a seizure has occurred, particularly here where the record is not adequately developed on points which are crucial to a determination as refined as the one in question.[11] Justice White in dissent in *United States v. Mendenhall, supra,* remarked that whether a seizure has occurred is a "fact-bound question with a totality-of-circumstances assessment that is best left in the first instance to the trial court . . . ." 446 U.S. at 569, 100 S.Ct. at 1885, 64 L.Ed.2d at 518–519. The panel in *United States v. Bowles, supra,* agreed with the *Mendenhall* dissent on the importance of establishing an adequate record at the district court level in order to determine the seizure question and also with the conclu-

---

10. Giving *Miranda* warnings in a police-citizen encounter which is otherwise a nondetention interrogation may very well elevate such an encounter to a seizure within the meaning of *Terry* in light of the public's association of *Miranda* warnings with an arrest. We, however, express no opinion at this time on the overall effect of giving *Miranda* warnings on the reasonableness of a belief that one is not free to leave.

11. While this circuit in *United States v. Robinson, supra,* in dictum, noted that in the absence of a dispute about the facts surrounding a police-citizen encounter, the appellate court can apply the appropriate legal standard to determine whether and when a seizure has occurred, the facts in this case are not well enough developed to permit this panel to exercise the "refined judgment" necessary to make such a determination.

sion that the totality-of-the-circumstances question is best left in the first instance with the trial judge. 625 F.2d at 532, n. 6. *See also United States v. Elmore, supra,* where we applied a reasonableness test to the district court's finding of no seizure until the defendant's ticket was removed.

Several matters which would be relevant to this determination are suggested in the record, but are not fully developed. The encounter took place in an area of the airport which was characterized as relatively private. It is possible, if not probable, that the area was so private that Lara might have felt himself to be isolated from others. The magistrate found that Lara was approached by two officers, and that a third was at one point within earshot and joined in the questioning. There is no indication as to whether Lara could have seen the third officer when the other two officers approached him, how close the third officer was to the other two, and whether Lara could reasonably have believed the third officer was with the two officers. The record indicates that officer Johnson was not in uniform, and suggests the other officers were also not in uniform. However, there is no definitive evidence in the record that the other two officers were not in uniform. We know that the officer asked Lara, "What's your real name?", which in light of the lack of evidence that an alias was being used might suggest an accusation. Still, we do not know the tone of the officer's voice, or how intimidating his question was. Finally, we know that Lara was seated, but we do not know whether the officers stood in such a way to block his exit or to indicate that he was not free to leave if he did not wish to answer their questions. The district court on remand should inquire into these and any other matters relevant to whether Lara would reasonably have considered himself free to leave.

As in *United States v. Robinson, supra,* we vacate the conviction and remand for a new suppression hearing and findings of fact and conclusions of law on the issue of whether and when there was a seizure and the legality of that seizure. If the district court finds there was a seizure before any

reasonable suspicion existed, and before Lara's disclaimer of ownership, then the alleged abandonment was tainted by illegal police conduct, and the cocaine must be suppressed. If it finds no seizure before Lara's disclaimer or reasonable suspicion before any seizure, the original sentence should be reinstated.

VACATED AND REMANDED.