Roland WARE, Plaintiff-Appellant,

v.

Kenneth Dean REED, as an individual and in his capacity as Sheriff of Caldwell County, Texas, et al., Defendants-Appellees.

No. 81-1438.

United States Court of Appeals, Fifth Circuit.

July 11, 1983.

Paul E. Knisely, Broadus A. Spivey, David Van Os, Austin, Tex., for plaintiff-appellant.

Nancy M. Simonson, Asst. Atty. Gen., Austin, Tex., for Smith and Maxwell.

Roy Q. Minton, Austin, Tex., for Reed and Braun.

Pamela Schoch, C.G. House, San Antonio, Tex., for Mark D. Hinnenkamp.

Before BROWN, GEE and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Improper jury instructions can sometimes prevent a conscientious and attentive jury from unweaving a tangled web. In this appeal from a general verdict against him, Roland Ware assails the district court's instructions to the jury on his federal and state law claims. General instructions were given to the jury on Ware's federal, but not his state law claims. When considered with the most liberal gloss we can place on them, we find that the instructions were deficient in several constitutional dimensions. We therefore reverse.

## I. *The Facts*

Roland Ware brought suit against five Texas law enforcement officials under 42 U.S.C. §§ 1981, 1983 and 1985(2) and (3). In addition, he alleged three state causes of action—assault and battery, slander, and intentional infliction of emotional distress. The defendants, all of whom are sued in their individual and official capacities, are Kenneth Dean Reed, Sheriff of Caldwell County, Texas, Edward Thomas Braun, Reed's deputy, Mark Douglas Hinnenkamp, Police Chief of Lockhart, Texas, Clayton Smith, a Texas Ranger, and Johnny Maxwell, a polygraph operator employed by the Texas Department of Public Safety.

The factual predicate for Ware's lawsuit is much contested, but two versions of the salient events can be stated with ease. Investigation of a heinous crime led Caldwell County, Texas, Sheriff Dean Reed to the Ware family's doorstep. Preliminary investigative initiatives had resulted in tips which indicated that Sandra Ware Jones, Roland's sister, was last seen with the murder victim, David Johnson. Roland accompanied[1] the police to headquarters for questioning[2]. Once at the stationhouse, he was

---

1. The voluntariness of this accompaniment is a factual dispute, which we expressly do not pass upon, but urge the use of special interrogatories on retrial to positively decide this issue. *See* text accompanying note 13, *infra.*

2. All of the defendants concede, however, that there was never probable cause to believe that Roland Ware had committed or participated in the killing of the murder victim. They also conceded at trial that Roland was never a suspect, although, we observe that there is some

given what might be called the third degree by Lockhart law enforcement officials who later persuaded him to undergo a lie detector test[3] in Austin around midnight the same night. It is undisputed that the questioning of Roland by these law enforcement officials did not culminate until 3:30 or 4:14 the next morning.[4]

Roland's description of what the interrogation was like differs drastically from the defendants' recollections. Roland alleges that in the course of questioning and administering the lie detector test, the "defendants acted and conspired to subject him to severe verbal abuse, including repeated threats, cursing, intimidation, racial and familial epithets and vilification, and that the abuse culminated in the use of unprovoked physical force by ... the defendants, including striking [him] in the mouth, swinging a fist near his face and striking the wall, pulling his hair, kicking him and stomping his feet."

The defendants, on the other hand, characterize the sheriff's interrogation of Roland as little more than a "father and son talk." All defendants denied participation in any acts of verbal or physical abuse of Roland or the use of threats and racial epithets against him.[5]

## II. Prelude to the Merits

### A. The Appellant's Contentions

Ware contends that the district court posed instructions to the jury on his claims of (i) unlawful detention without probable cause and (ii) use of force in violation of due process in such a way as to prevent the jury from properly considering the particular constitutional right at issue. In so framing his argument, Ware professes adherence to the Supreme Court's instruction that "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived a right 'secured by the Constitution and laws'." *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979). Accordingly, he concludes that

---

ambiguity concerning this concession. The polygraph report of the Texas Department of Public Safety lists Roland Ware, the polygraph subject, as a *suspect* in the murder of David Johnson. The designations on that report for victim and *witness* were clearly blotted out on the form. We also take note of the questions asked Roland for the polygraph examination and the closing argument of defendants' counsel on Roland's status when he was questioned. *See* notes 4 and 10 *infra.*

3. Also in dispute is whether or not Roland voluntarily submitted to taking the polygraph examination. He maintains that he was coerced into submitting to the examination, but the defendants all point to his signing of the voluntary authorization form as consent. We also encourage the use of special interrogatories on retrial to affirmatively resolve this issue.

4. The polygraph test was administered in Austin, Texas, approximately 45 minutes to an hour's drive from Lockhart. Roland was taken there in the police car. Maxwell, the polygraph operator, testified that Roland was asked seven relevant questions during the three hour examination:

(1) Do you intend to lie about any of the questions about who killed David Johnson?
(2) Did you actually see Sandra come home?

(3) Did you see blood on Sandra when she came home?
(4) Do you know for a fact that your sister killed David Johnson?
(5) Did you kill or help kill David Johnson?
(6) Did you go to or near David's body after he was shot?
(7) Are you holding back anything you know about David Johnson getting killed?

After the test had been administered, Maxwell, the polygraph operator, returned to the room and informed Roland that he was being "deceptive". At trial, Maxwell admitted that he was unable to determine positively from the polygraph test results whether Roland's responses to any of the questions were untruthful. It is undisputed that all of the other defendants, except officer Hinnenkamp, interrogated Roland further after the polygraph test was completed. At some point during the interrogation, Roland was taken ill and had to be escorted to the lavatory to vomit.

5. In light of the general verdict returned against him, we are convinced that the jury resolved the credibility issues against the appellant. Our reversal of the judgment below is due solely to a defective charge to the jury. We neither intimate nor entertain any views about the merits of this squabble, except to point out that were it not for shortcomings in the jury instructions Ware's appeal would be lost.

the district court committed reversible error by failing adequately to distinguish between the constitutional interests at issue. Ware acknowledges that the court discussed separately certain aspects of his Fourth Amendment claim (involuntary detention) and the Fourteenth Amendment due process claim (use of force), but then, Ware points out, the court improperly aggregated the claims for purposes of the jury's evaluation of the possible constitutional violations. We agree with this assessment of the district court's action and conclude that its charge misled the jury in its deliberations.

### B. Standard of Review for Jury Instructions

■ When reviewing a district court's charge to the jury, we are bound to consider the instructions on the "whole, in view of the allegations of the complaint, the evidence presented and the arguments of counsel to determine whether the jury was misled and whether it understood the issues presented." *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 300 (5th Cir.1978); *Smith v. Borg-Warner Corp.,* 626 F.2d 384, 386 (5th Cir.1980); *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1316 (5th Cir.1977) *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Kyzar v. Vale Do Ri Doce Navegacai, S.A.,* 464 F.2d 285 (5th Cir.1972) *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973). "If the charge leaves the reviewing court with 'substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations' it cannot stand." *Martin v. City of New Orleans,* 678 F.2d 1321, 1325 (5th Cir. 1982) *quoting Dwoskin v. Rollins, Inc.,* 634 F.2d 285, 293 (5th Cir.1981). "The charge need not be faultless", *Howard v. General Cable Corp.,* 674 F.2d 351 (5th Cir.1982), and "we will not reverse unless the instruction as given had a tendency to confuse or mislead the jury." *Farace v. Independent Fire Insurance Co.,* 699 F.2d 204 (5th Cir.1983). Under this familiar rubric, "[t]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Houston v. Herring,* 562 F.2d 347, 349 (5th Cir.1977) (per curiam) *quoting Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1100 (5th Cir.1973) *cert. denied* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *see also* 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2558 (1978).

### III. Discussion of the Claims

### A. Unlawful Detention

Ware argues that the district court's instructions[6] provided little guidance on the claim of unlawful detention under the

---

**6.** The instruction on involuntary detention read in pertinent part—

> You must decide, first of all, that he was detained without his consent. If you decide he was detained without his consent, you must then decide whether the police officers, under the circumstances, acted within or without the bounds of their lawful authority under state law.
>
> Obviously, it is not every detention without consent which gives rise to a constitutional violation. If the defendants acted within the limits of their lawful authority under state law, then the defendants could not have deprived the plaintiff of his rights without due process of law.
>
> Now, under the laws of Texas, these defendants [Reed, Hinnenkamp, Braun, Smith, and Maxwell] are all police officers. It is the duty of every police officer to preserve the peace within his jurisdiction.
>
> To accomplish this purpose, he has a duty to use all lawful means. As a matter of state law, each sheriff is the conservator of peace within his county. He is obligated to investigate all crimes, to identify, apprehend and commit to jail all offenders until an examination or trial can be had.
>
> In other words, a peace officer is required to investigate violations of state laws by questioning people who may have information about the crime, or by gathering physical evidence.
>
> \* \* \* \* \* \*
>
> [The defendants] had a right to use all lawful means that they believed necessary to conduct a thorough investigation, including inspecting and photographing the scene, gathering physical evidence, fingerprints, conducting tests, such as ballistics' tests, interviewing potential witnesses to any circumstances at all surrounding the offense. That was their right under Texas law, and their duty.

Fourth Amendment. He contends that in considering his involuntary detention claim the jury should have received an instruction on probable cause. Conversely, the defendants argue that the involuntary detention instruction should not have been presented to the jury at all. They argue that Ware consented to the entire ordeal; that he was not under arrest; that there was no "seizure" within the meaning of the Fourth Amendment; and thus no Fourth Amendment interest is implicated. They concede that there was not probable cause [7] to detain him against his will, but point to a line of decisions in Fourth Amendment jurisprudence which instructs that not all contact between police and citizen is scrutinized under constitutional standards. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *U.S. v. Hernandez,* 668 F.2d 824 (5th Cir.1981); *U.S. v. Setzer,* 654 F.2d 354 (5th Cir.1981); *U.S. v. Moeller,* 644 F.2d 518 (5th Cir.) *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981).

The argument over this issue is so much ado about nothing, *see* note 7 *supra,* as the Supreme Court has stated the commonly accepted view on when a "seizure" within the meaning of the Fourth Amendment has occurred. "We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 509 (1980) (Opinion of Stewart, J.). The Court then set forth the relevant considerations for the factfinder to determine when a "seizure" of the person has occurred which will implicate the Fourth Amendment.

We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (note omitted). *See also United States v. Lara,* 638 F.2d 892 (5th Cir.1981); *United States v. Robinson,* 625 F.2d 1211 (5th Cir.1980); *United States v. Elmore,* 595 F.2d 1036 (5th Cir.1979).

We think that the instruction on involuntary detention was inadequate to apprise the jury of all the relevant factors to be considered in making this determination. The district court instructed the jury that it must first decide whether Ware was detained without his consent. Then, the jury was told that if it found that Ware was involuntarily detained, it must decide whether the officers acted within the bounds of their authority under *state* law. If they did, then Ware's detention, even though involuntary, does not give rise to a constitutional violation. Following this abbreviated instruction, the district court then instructed the jury on the manifold lawful duties of peace officers in Texas.

This instruction is inadequate and misleading because it only explains to the jury the defendants' obligations under *state* law without any hint of federal constitutional limitations. The instruction permitted the jury to conclude that Ware was indeed involuntarily detained by the police without

---

**7.** We observe that this concession would have entitled the district court to rule as a matter of law that the officers did not have probable cause to detain Ware against his will. The effect of such a ruling would render an instruction on probable cause unnecessary. The jury then would be left to answer the much more pertinent question of whether Ware consented to the detention, interrogation, and polygraph examination. E.g., *Morales v. New York,* 396 U.S. 102, 105, 90 S.Ct. 291, 293, 24 L.Ed.2d 299, 302 (1969); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

probable cause for a significant period of time, but suffered no deprivation of liberty protected by the Constitution,[8] because the officers were acting within the bounds of their lawful authority to investigate crimes under state law. "Detentions may be 'investigative' yet violative of the Fourth Amendment absent probable cause." *Florida v. Royer,* —— U.S. ——, ——, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 237 (1983) (White, J., Plurality Opinion). *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Hill,* 626 F.2d 429 (5th Cir.1980).

We point out here that Ware had been previously fingerprinted by the police in connection with the murder investigation; had initially refused to undergo the lie detector test[9]; was given *Miranda* warnings; and had two days before the interrogation which gives rise to this lawsuit been questioned about the murder. When during the interrogation a "seizure" occurred, *see Cupp v. Murphy,* 412 U.S. 291, 292, 93 S.Ct. 2000, 2002, 36 L.Ed.2d 900, 903 (1973), or whether these facts are sufficient to show his "sei-

zure" is to be decided in the first instance by the trial court below. *United States v. Mendenhall,* 446 U.S. at 569, 100 S.Ct. at 1885, 64 L.Ed.2d at 518–19 (whether a seizure has occurred is a "fact-bound question with a totality-of-circumstances assessment that is best left in the first instance to the trial court....") (White, J., dissenting); *United States v. Lara, supra,* at 898 ("the district court is best able to determine whether and when a seizure has occurred....."); *cf. United States v. Brunson,* 549 F.2d 348 (5th Cir.1977).

We are firmly of the view that if Ware indeed consented to the entire transaction—detention, interrogation, and polygraph examination—then no constitutional interest was implicated. Nevertheless, based on the instruction, we cannot determine from a general verdict whether the jury positively resolved the consent issue against him.

### B. *Use of Force*

■ The district court's instruction on Ware's use of force claim also requires that a new trial be granted.[10] This instruction

---

8. We are especially concerned that the trial court's instruction may have confused or misled the jury in light of the defendants' counsel's argument to the jury on Roland's status at the time of his detention, *see* note 2 *supra,* and his (counsel's) statement to the jury on the detention issue. In his closing summation to the jury, defendants' counsel argued that

Roland was a suspect. Is that as clear as I can make it? He was, to me. He is today to each one of those officers. I can promise you he is to this minute. There is no question about it.

\* \* \* \* \* \*

Certainly he was a suspect.

\* \* \* \* \* \*

But detention, whether it's voluntary or whether it is with good sensible cause, is what law enforcement is all about.

Thus, the jury may have thought that since Ware was arguably a *suspect* in the case, he was required to submit to any manner or means of questioning by the officers because they were performing their duties under state law and had a right to detain *suspects* for questioning.

Of course, under constitutional standards a *witness,* which the defendants maintain Roland was, retains his "freedom to walk away", *Terry v. Ohio,* 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968), from police interrogation. Whether or not a *suspect* retains this

same freedom is more questionable. Moreover, whether one who has been taken from the local police department to another town in the early morning hours by several police officers who quite probably were armed is "free to walk away" is a question for the jury.

9. The record disclosed that plaintiff signed a waiver form to take the polygraph examination. The signing of a waiver form "though not conclusive, is 'usually strong proof' of the voluntariness of the waiver." *Blasingame v. Estelle,* 604 F.2d 893, 896 (5th Cir.1979) *quoting North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979).

10. The district court instructed the jury that

Now, the second aspect of the plaintiff's claim was that he was subjected to excessive force by the defendants during his questioning. In that regard, as previously mentioned to you, you are instructed that every person has a right not to be subjected to unreasonable or excessive force while being questioned by a law enforcement officer, even though the questioning was otherwise made in accordance with due process of law.

If you find that the plaintiff was detained against his will, and unlawfully, or if you find that the defendants used physical force upon him during the questioning, you must then

taken as a whole and in light of the existing circumstances, if not erroneous, may at least have misled or confused the jury. An instruction cannot stand if it has "a tendency to confuse or to mislead the jury". *Farace v. Independent Fire Insurance Co., supra,* at 207.

The core defect in the instruction lies in its suggestion that a person has a right not to be subjected to "unreasonable or excessive force while being questioned by a law enforcement officer...." This instruction suggests that *some* force, may be used against an individual being interrogated by the police so long as the use of such force is not "unreasonable or excessive." Added to this was the requirement that the "conduct of the officers must amount to an abuse of official power that shocks the conscience." Thus, the jury could have credited the plaintiff's version of the facts that he was physically assaulted by the officers at the stationhouse, but that the injuries he suffered were so slight and inconsequential that the force used could not be characterized as either "unreasonable or excessive."

"Reasonableness of force, must be evaluated in light of the need, the motivation, and the extent of injury inflicted." *Roberts v. Marino,* 656 F.2d 1112, 1114 (5th Cir.1981). The determination of a constitutional violation will depend on the peculiarly tailored facts of every case. *Id.* No

bright line can be drawn, *Baker v. McCollan, supra,* but every case must turn on its own facts. The real difficulty with the charge was that it did not carefully distinguish the use of force in the apprehension or detention of a suspect and the use of force in interrogations. As to the former, "If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience it should be redressed under § 1983." *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). But during interrogation no physical force is constitutionally permissible.

■ The circumstances of the case reveal that Ware was in the presence of several police officers for purposes of interrogation. There is no evidence in the record which indicates that there was ever any need for the officers to use any degree of force against him. We are firmly of the view that the use of physical violence against a person who is in the presence of the police for custodial interrogation, who poses no threat to their safety or that of others, and who does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified, is a constitutional violation.[11]

---

consider whether those activities by the defendants violated plaintiff's constitutional rights and deprived him of due process. It is not every unlawful detention or every personal hurt by a public officer which would constitute a violation of due process.

\* \* \* \* \* \*

Now, you must consider all of the circumstances: the duration of the detention, whether any of it was voluntary on plaintiff's part, the seriousness of the crime being investigated, the amount of force being used, if any, the extent of the injury inflicted, if any, and the motive of the officers.

With regard to the motive of an officer, you must consider whether his actions were inspired by malice rather than merely carelessness on unwise excessive zeal. The conduct of an officer, in light of all the existing circumstances, must amount to an abuse of official power that shocks the conscience in order for you to find there was an unconstitutional violation of plaintiff's rights.

11. In an apparent effort to differentiate the amount of force necessary to state a claim under § 1983, and that required to make out a common law tort action for battery, the defendants argue that Ware does not state a constitutional claim, citing Judge Friendly's poignant prose in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) *cert. denied sub nom, John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), that some assaults by state officers do not rise to a constitutional violation. We, of course, cannot take issue with this suggestion. "Not every violation of state tort and criminal assault laws will be a violation of [a] constitutional right, but some of course may. *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980).

We hasten to point out, however, that the decisions cited by the defendants regarding the use of force by state officers are cases involving the apprehension, detention, or control of prisoners, "not usually the most gentle or tractable of men and women", *Furtado v. Bishop,*

Consequently, if the jury found either explicity or implicity under appropriate instructions that the officers did indeed physically abuse Ware, then such an assault would be "*sufficiently disproportionate to the need presented* and so deliberate and unjustified a misuse of the policeman's badge and bludgeon as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Shillingford v. Holmes, supra* at 266 (emphasis supplied); *Feemster v. Dehntjer,* 661 F.2d 87, 89 (8th Cir.1981) ("There is no occasion for the use of any force against a prisoner who quietly submits.") Therefore, an instruction is deficient which leaves it to the jury to determine whether force was reasonable or excessive when the record contains no evidence that force was needed. *Feemster v. Dehntjer, supra,* at 89. Of course, if the jury determined that force was used, it would have been altogether proper for the district court, in its instruction on damages, to advise the jury that it may consider the degree of force used and the amount of injury inflicted in assessing its damages award.

### C. *Equal Protection*

Next, Ware argues that the district court erred in refusing to instruct the jury on his equal protection claim. Ware requested that the district court submit instructions to the effect that if the defendants violated his Fourth Amendment or due process rights, and did so with invidious intent to discriminate against him on racial grounds, then the jury should also find an equal protection violation under the Fourteenth Amendment and 42 U.S.C. § 1981. The defendants argue in rebuttal, that Ware chose to forego his denial of equal protection claim since no evidence in support of this claim was presented at trial.

■ It is well settled that a court is not free to instruct a jury on an issue of law on which there is no evidence. *Robert v. Conti Carriers and Terminals, Inc.,* 692 F.2d 22, 26 (5th Cir.1982); *Trans-American Steel Corp. v. J. Rich Steers, Inc.,* 670 F.2d 558, 562 (5th Cir.1982). To give an instruction not warranted is improper. *Myers v. Day & Zimmermann, Inc.,* 427 F.2d 248 (5th Cir.1970).

■ An instruction to the jury is, of course, warranted when there has been substantial evidence adduced during the trial to create a fact question for the jury to settle. *Foster v. Ford Motor Co.,* 621 F.2d 715, 717 (5th Cir.1980); *Liver v. J.B. Talley and Co.,* 618 F.2d 327, 330–31 (5th Cir.1980); *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc).

In response, Ware suggests that the "evidence fully supported the submission of [the equal protection] issue to the jury." His argument is that the defendants hurled various racial epithets at him (which he disclosed), but which are far too ignominious for us to season the pages of the *Federal Reporter.* Hence, proof of disparate treatment is in the use of these offensive words. We decline to make a definitive ruling on this thorny issue. This is best determined on remand in the light of the new record and the specific requested instructions.[12]

604 F.2d 80, 95 (1st Cir.) *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1979), *quoting Johnson v. Glick.* Courts traditionally lend deference to the on-the-spot judgment of the prison guard or arresting officer as to when to use force against a belligerent inmate or dangerous, fleeing suspect. We employ a "reasonableness" test in those situations. *Compare* the plaintiffs' claims in this case *with Pritchard v. Perry,* 508 F.2d 423, 426 (4th Cir.1975) ("[t]he defendants lost sight of the obvious distinction that exists between the ordinary citizen and the prison inmate.") and *Shillingford v. Holmes, supra,* at 265 ("Actions permissible in controlling a riotous mob or in dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian.");

*see also Black v. Stephens,* 662 F.2d 181, 188 (3rd Cir.1981) ("a law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of a Fourteenth Amendment liberty 'without due process of law'.").

12. Query whether the use of such language, rancid and denigrating as it certainly is, standing alone, amounts to the kind of violation contemplated by the Fourteenth Amendment Equal Protection Clause and entitled to redress under § 1981. *Compare Howard v. National Cash Register Co.,* 388 F.Supp. 603 (S.D.Ohio 1979) and *Johnson v. Hackett,* 284 F.Supp. 933 (E.D.Pa.1969) *with Harris v. Harvey,* 605 F.2d 330, 338 (7th Cir.1979) (collecting cases) and

### D. *Duty of Officer to Intervene*

Ware further argues that the district court erred in refusing to instruct the jury that a police officer has an affirmative duty to prevent unlawful abuse of persons by other officers which occurs in his presence. Ware's request for this instruction was aimed primarily at the liability of Chief Hinnenkamp who, it is alleged, merely observed the physical and verbal assaults on the plaintiff, but did not actually engage in any of this himself. The district court instructed the jury that:

> [T]hese defendants: Sheriff Reed, Chief Hinnenkamp, Deputy Braun, Mr. Smith and Mr. Maxwell are all police officers. It is the duty of every police officer to preserve the peace within his jurisdiction.

This instruction was inadequate to properly advise the jury of this particular claim of Ware's. The instruction is an integral part of the district court's instruction on the involuntary detention claim. It was not intended to address Ware's particular claim that an officer has an affirmative duty to prevent other officers from violating the rights of one being interrogated. The claim is essentially one of *nonfeasance* on the part of the law enforcement officers. *Whirl v. Kern,* 407 F.2d 781, 788 (5th Cir.1968) *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

The instruction, on the other hand, was also part and parcel of the district court's instructions about the duties of a peace officer in Texas to preserve the peace in his jurisdiction and to investigate crimes. An instruction on the defendant's alleged acquiescence in the unconstitutional conduct of other officers should have been given. *See Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir.1972) ("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."); *Jennings v. Davis,* 476 F.2d 1271, 1275 (8th Cir.1973) ("Where, however, one has an affirmative duty to act and he fails to act accordingly, he may be held liable for his nonfeasance if his omission is unreasonable under the circumstances."); *Huey v. Barloga,* 277 F.Supp. 864, 872 (N.D. Ill.1967) ("[w]here the defendant is under some affirmative duty to act and he fails to act accordingly, he may be held negligently responsible for his omission."); *Cf. Sims v. Adams,* 537 F.2d 829 (5th Cir.1976).

### E. *The Admission of Unfair, Prejudicial Evidence*

Next, Ware contends that the district court erred in admitting evidence of an alleged biracial sexual affair between Ware and the wife of an employee of the First Baptist Church where he was employed. It occurred more than a year after the facts which gave rise to this lawsuit occurred and ultimately caused Ware to be dismissed from his job at the Church.

We defer a definitive ruling on this volatile evidentiary issue as the problems it presented at trial are unlikely to reoccur during the new trial. The district court stressed, and we do too, that exploration and unnecessary delving into the details of this affair would be *highly prejudicial.* We would also admonish the district court to consider most carefully the teaching of Rule 403 of the Federal Rules of Evidence:

> Although relevant, evidence may be excluded if *its probative value is substantially outweighed by the danger of unfair prejudice,* confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. (Emphasis supplied).

*City of Minneapolis v. Richardson,* 307 Minn. 80, 82–83, 239 N.W.2d 197, 200 (1976); Cf. *Ex parte, Hamilton,* 376 U.S. 650, 84 S.Ct. 982, 11 L.Ed.2d 979 (1964) (per curiam); *Allen v. City of Mobile,* 331 F.Supp. 1134, 1150 (S.D.Ala. 1971), *aff'd,* 466 F.2d 122 (5th Cir.1972) (per curiam) *cert. denied,* 412 U.S. 909, 93 S.Ct.

2292, 36 L.Ed.2d 975 (1973) (personnel in the police department instructed to refrain from the use of racially derogatory words); *see generally* Delgado, *Words That Wound: A Tort Action for Racial Insults, Epithets, and Name Calling,* 17 Harv.C.R.–C.L.L.Rev. 133, 159–65 (1982).

Bearing in mind this suggestion, we point out that the sexual affair has absolutely nothing to do with the constitutional violations at issue in the trial; although it might be relevant to the damages question. Given the obviously prejudicial nature of the affair, the trial court will simply have to weigh its probative value with regard to damages against its overall unfair, prejudicial effect.

### F. The Refusal to Instruct on the Pendent State Claims

■ The district court declined to submit instructions to the jury on Ware's state law claims for slander, assault and battery, and intentional infliction of mental anguish and emotional distress. Yet, the charge is replete with instances where the district court emphasized that some injuries are so minor that they do not constitute a violation of the constitution but only amount to a state tort claim. We believe that the failure to submit appropriate instructions to the jury on Ware's pendent state law claims was error.

The state law claims arise from the same occurrence as Ware's Fourth Amendment unlawful detention and Fourteenth Amendment due process claims. In other words, the federal and state law claims derive from a common nucleus of operative fact. Quite properly, the pendent state claims were not dismissed before trial. Evidence was submitted on the claims. Mindful of a district court's discretion to entertain pendent claims, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228, we think that the court lacked an acceptable basis for refusing to instruct the jury on Ware's state law claims. *Perry v. Jones,* 506 F.2d 778, 781 (5th Cir.1975) (It was error for the district court to refuse to submit the appellant's state law claim to the jury.); *see Brown v. Knox,* 547 F.2d 900 (5th Cir.1977), a case strikingly similar to the one at bar, where this Court stated that:

Here, with the possible exception of the claim for intentional infliction of emotional distress, *the issues of state law are not particularly complex but rather*

*spring from traditional tort actions.* As a result, we need not be overly concerned with 'procuring for [the parties] a surer footed reading of applicable law'.... Neither do we foresee that the proof will be substantially devoted to the unique elements of the state tort actions, or that the issues or remedies involved in these actions will 'substantially predominate' the litigation. In short, principles of judicial economy, convenience, and fairness to litigants dictate the assumption of jurisdiction over the state claims.

*Id.* at 903 (citations omitted) (emphasis supplied). *See also Warehouse Groceries Management, Inc. v. Sav-U-Warehouse Groceries, Inc.,* 624 F.2d 655, 659 (5th Cir.1980) ("[t]here was no excuse for the trial court not retaining the state court claims ... to be tried in the federal jurisdiction."). *Accord Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442, 451 (1970) ( [t]he commonsense policy of pendent jurisdiction [is] the conservation of judicial energy and the avoidance of multiplicity of litigation...."); *Hagans v. Lavine,* 415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577, 592–93 (1974) ("[p]endent state law claims are not always, or even almost always to be dismissed and not adjudicated."); *Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 698 F.2d 1295, 1319–20 (5th Cir.1983) (strict dismissal of pendent state claims is "conceptual rigor [that] would achieve undesirable ends and ensconce valid considerations of judicial economy, convenience and fairness to litigants behind a suffocating veil."); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir.1974) *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Brunswick v. Regent,* 463 F.2d 1205 (5th Cir.1972) (per curiam) ("As a judicial economizer, pendent jurisdiction permits transactional unity to serve as an entry visa to the federal enclave and merits our approbation.").

### IV. Attorney's Fees

■ Finally, Ware invites this court to direct an award of attorney's fees in order for him to compensate his attorneys for the

time and expense incurred *pursuing this appeal.* *See* Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. We decline this invitation because we must. *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670, 674 (1980) ("[C]ongress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of its claims.") Consequently, Ware's request for attorneys' fees is premature. His status as a "prevailing party" which would warrant the award of a reasonable attorney's fee is a "matter which must await further developments." *Ziegler v. Ziegler,* 632 F.2d 535, 539 (5th Cir.1980).

## V. *Use of Special Interrogatories*

■ We strongly encourage the district court to consider the use of special interrogatories under F.R.Civ.P. 49(a) with an appropriate general charge in submitting the case to the jury on retrial. We are aware that the district court has considerable discretion to decide when and whether to use a special or general verdict form. *Miley v. Oppenheimer and Co.,* 637 F.2d 318, 334 (5th Cir.1981). Nevertheless, this case—with its multiple defendants claimed to be culpable in different degrees, charged by the plaintiff with numerous and sundry acts of verbal and physical abuse, some of which are constitutionally forbidden—impresses us as a prime candidate for this beneficial procedural device.

"This Court has long extolled the use of special interrogatories under Rule 49(a)." [13] *J.C. Motor Lines, Inc. v. Trailways Bus System,* 689 F.2d 599 (5th Cir.1982). Special interrogatories are especially useful in a trial where subtle determinations of fact such as consent, intent, or subjective impressions are at issue. They are helpful to a jury because they reduce an otherwise complex trial with a mass of subtle issues to its simplest and most important form. The genuine issues are distilled and an appellate court is often aided immeasurably when it is called to review the case. In short, special interrogatories make both a jury and a reviewing court so much the wiser and so much less confused. *See also, Garwood v. International Paper Co.,* 666 F.2d 217, 222 (5th Cir.1982) ("[s]pecial verdicts greatly benefit an appellate court's review of jury findings"); *Petes v. Hayes,* 664 F.2d 523, 526 (5th Cir.1981) *quoting Tugwell v. A.F. Klaveness & Co.,* 320 F.2d 866 n. 2 (5th Cir.1963), *cert. denied,* 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970 (1964) ("[w]e specifically approve of the district court's use of special interrogatories, which can avoid the 'inscrutable mystery of a general verdict [and] impenetrable uncertainty'"...); *Keyes v. Lauga,* 635 F.2d 330, 333 (5th Cir.1981) ("[s]pecial interrogatories are unassailable if they adequately present the issues to the jury.").

### Conclusion

The district court's instructions to the jury do not pass muster. Accordingly, we reverse the judgment of the district court and remand for a new trial consistent with this opinion. We register only this small caveat: "Experience teaches us that we should reiterate that nothing said or unsaid, expressed or implied is a determination, holding or intimation, one way or the other, on the merits of the cause." *Brazier v. Cherry,* 293 F.2d 401, 409–10 (5th Cir.1961).

**REVERSED AND REMANDED.**

---

**13.** *Jones v. Miles,* 656 F.2d 103, 106 n. 3 (5th Cir.1981); *Guidry v. Kem Manufacturing Co.,* 598 F.2d 402, 403, 405–06 (5th Cir.1979); *Nardone v. Reynolds,* 538 F.2d 1131, 1137 n. 16 (5th Cir.1976) *reh. denied,* 546 F.2d 906 (1977); *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 934–35 (5th Cir.) *reh. denied,* 530 F.2d 34 (1976); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 693–94 (5th Cir.1975) *cert. denied,* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Simmons v. King,* 478 F.2d 857, 862 n. 12 (5th Cir.1973); *Burns v. Anchor-Wate Co.,* 469 F.2d 730, 734 n. 8 (5th Cir.1972); *In re Double D Dredging Co.,* 467 F.2d 468, 469 (5th Cir.1972); *Bailey v. Kawasaki-Kisen, K.K.,* 455 F.2d 392, 394 (5th Cir.1972). *See generally* Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338 (1967).