**Johnny GRAY, Plaintiff–Appellant,**

v.

**Detective SPILLMAN; Detective Bishop; Detective Riggs; Detective Cartner, Defendants–Appellees.**

No. 89–7740.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1990.

Decided Feb. 7, 1991.

Edwin Norris Wilmot, Eliades & Eliades, Hopewell, Va., for plaintiff-appellant.

Michael Austin Gilles, argued (Martin N. Erwin, Smith, Helms, Mulliss & Moore, Greensboro, N.C., Allan R. Gitter, Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and MURNAGHAN and CHAPMAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Johnny Gray instituted a 42 U.S.C. § 1983 action against three police officers and a jailer, alleging that the officers beat and injured him during two custodial interrogations. The district court, relying on the magistrate judge's recommendation, granted summary judgment for the defen-

dants. The magistrate judge had concluded that the affidavits indisputably showed that Gray had not suffered any serious physical injury. Gray has appealed the district court's judgment.

We reverse the district court's judgment in favor of the police officers because serious injury is not an essential element of a § 1983 action when the claim is predicated on being beaten and threatened during custodial interrogation. We affirm, however, the court's summary judgment for defendant Billie L. Cartner, the jailer, as the affidavits overwhelmingly demonstrate that he could not have been deliberately indifferent to Gray's serious medical needs.

## I.

Instituting the § 1983 action in the United States District Court for the Middle District of North Carolina, Winston–Salem Division, Gray alleged that Winston–Salem police officers Robert A. Spillman, Kenneth W. Bishop, and William P. Riggs beat and injured him during two interrogations and that Sergeant Cartner of the Forsyth County Sheriff's Department deliberately failed to provide medical treatment for his injuries. The interrogations occurred on December 11 and 14, 1987, while Gray was confined in the Forsyth County Jail awaiting trial on burglary and robbery charges.

With respect to the December 11 interrogation, Gray asserted that Spillman, Bishop, and Riggs took him out of the jail to an interrogation room in the Winston–Salem Public Safety Building to speak with him about the Gilmore case, in which Gray was a suspect. They handcuffed Gray to a chair, and, according to Gray, the handcuffs were so tight that his hands became swollen. Spillman asked Gray about the Mabe case instead of the Gilmore case, but Gray refused to answer without the presence of his attorney. Gray alleged that he was kept in the room for several hours without food, water, and cigarettes and was not allowed to use the restroom.

Gray also claimed that Spillman ordered him to stand up and then shoved his face into a wall, injuring his lip and knocking loose three of his front teeth. Gray alleged that the officers continued the interrogation, making racist remarks and threatening to beat him further if he would not confess to robbing Mabe. According to Gray, Spillman told him, "You are going to tell me that you took something from Mr. Mabe before you leave here or I am going to beat the hell out of you." Upon Gray's return to the jail, Cartner failed to get medical attention for Gray.

With respect to the December 14 interrogation, Gray claimed that he told Cartner that he did not want to go with the officers because he was afraid of being assaulted but Cartner told him that he had to go with them. Gray was again taken to the Public Safety Building for more questioning. He claimed that the officers attempted to get him to sign both an incriminating statement and a waiver of counsel. When he refused, Bishop allegedly kicked Gray's right foot, causing severe pain and swelling. Gray eventually did make an incriminating statement, which was not used by the prosecution at Gray's subsequent criminal trial.

Gray's § 1983 complaint alleged that, as a result of the two interrogations, he sustained damage to his right foot, his teeth, and his right hand, and he needed corrective surgery to repair his lip. He sought damages for his injuries, pain and suffering, and mental anguish.

The defendants admitted that they interviewed Gray on the two dates in question in the Public Safety Building. But they denied beating, threatening, or assaulting Gray. The defendants moved for summary judgment and introduced the following evidence in support of their position:

1. Officers Spillman, Bishop, and Riggs, in separate affidavits, acknowledged the two interviews with Gray but denied assaulting or threatening him.

2. Officer Michael V. McCoy said in an affidavit that he stepped into the interrogation room on December 11 but did not see any evidence that Gray had been injured.

3. Officers Otis Sterling Belton and Deborah Anderson Gatto, who escorted Gray back to the jail on December 11,

stated in affidavits that Gray did not complain about being assaulted nor did they see any indication that Gray had been assaulted.

4. Darryll W. Ford and Reginald C. Craven, both inmates at the jail, stated in affidavits that they did not see any indication that Gray had ever been assaulted. Craven also stated that Gray later told him that his front teeth had been knocked loose in a fight at a pool hall. Ford stated that Gray had asked him to submit a false statement in the case and offered to pay him money. Craven recanted a previous statement he made in favor of Gray, claiming it was untrue and made pursuant to Gray's threats.

5. Deputies William J. Purvis and Jesse T. Owens stated in affidavits that they did not see any sign of physical injury upon examining Gray at the jail. Owens did state, however, that Gray submitted a request for medical attention on December 16, 1987.

6. Cartner stated in an affidavit that he was not on duty on December 14, 1987, as Gray had alleged; jail records confirmed that assertion. He said that he was informed on December 16 that Gray alleged that he had been physically assaulted but an examination performed by his deputies uncovered no evidence of injury. Cartner stated that he never had a reason to believe that Gray had been assaulted.

7. Dr. Robert T. Jackson, a member of the medical staff at Central Prison, stated in an affidavit that a medical history was made of Gray in May 1988, upon Gray's arrival at the prison. That history, completed five months after the December interrogations, confirmed that Gray had a loose front tooth and had suffered injuries to his right foot and hand but the history also indicated that Gray's problems with his right foot and hand stemmed from injuries that had occurred long before December 1987. Further, Ray A. Drewey, a physician's assistant at the prison, stated in an affidavit that in August 1988 Gray complained of swelling in his right foot and hand, claiming that the swelling was caused by the December interrogations.

While Drewey admitted that an examination revealed some swelling, he also stated that Dr. Jackson had earlier concluded that Gray's problems predated December 1987.

8. Dr. Larry H. Ray, a dentist at Central Prison, stated in an affidavit that Gray complained of a loose tooth in May 1988. Ray said that he found no loose teeth but did discover severe loss of bone due to periodontal disease.

Evidence in the record in opposition to the defendants' motion for summary judgment included the following:

1. Gray's own deposition testimony, in which he reiterated his allegations of being threatened and beaten during the December 11 and 14 interrogations. Gray also denied threatening Craven to prevail on him to submit a favorable affidavit.

2. James K. Hines, an inmate at Central Prison, stated in an affidavit that he was at the jail on December 11 to post bond for a friend. When he arrived, he saw Gray accompanied by Spillman, Bishop, and Riggs. Hines said that about three hours later he saw two other officers bringing Gray back and that Gray was bleeding from his mouth "real bad." He also said he saw Gray ask Sergeant Cartner to take him to a doctor and that Cartner refused. Hines also swore that while in prison he was visited by Donald York, the defendants' investigator, who tried to bribe and threaten him out of testifying on Gray's behalf. York submitted an affidavit denying these allegations. York also stated in his affidavit that the official log of the jail's visitors contained no record of any visit from Hines and that Hines failed to identify the person for whom he posted bail during his alleged December 11, 1987, visit to the jail.

The magistrate judge concluded that "a fair-minded jury could not return a verdict for [Gray] on the evidence before the Court." The magistrate judge reasoned that the existence of a serious physical injury resulting from the interrogations was "one of the essential bases for [Gray's] claim" and that "[Gray] fail[ed] to present any substantial evidence of injury, much less a serious injury." The district court

affirmed the findings and rulings of the magistrate judge, granted summary judgment in favor of the defendants, and dismissed the suit. Gray has appealed the district court's judgment.

## II.

### A.

■ The magistrate judge reasoned, and the defendants now argue, that serious physical injury is an essential element of a § 1983 claim predicated on force used during custodial interrogation. That proposition led the magistrate judge, and ultimately the district court, to the conclusion that Gray could not make out a § 1983 claim.

In *King v. Blankenship*, 636 F.2d 70 (4th Cir.1980), we held that injury was not an essential element of a § 1983 claim based on excessive force. *Id.* at 72. In that case, Emmitt King, a prisoner, was called before a prison disciplinary committee for a hearing on a charge against him. *Id.* at 71–72. The chairman of the committee grabbed King by the beard and threw him to the floor, pulling a portion of King's beard out of his cheek. The chairman also slapped King several times. No lasting, serious injury was inflicted. *Id.*

The Fourth Circuit reversed the district court's judgment for the defendants. *Id.* at 73. Judge Winter, writing for the panel, stated, "Lest there be doubt as to the rule in this circuit, we specifically hold that the unjustified striking, beating, or infliction of bodily harm upon a prisoner gives rise to liability under 42 U.S.C. § 1983 on the part of one, who, acting under color of state law, engages in such conduct without just cause." 636 F.2d at 72. Although Judge Winter recognized that "extent of injury" was an important factor in excessive force analysis, *see* 636 F.2d at 73 (citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973)), that factor only comes into play when the nature of the force must be weighed against

the proffered justification for its application.

Here, rather than being beaten for no legitimate reason, Gray alleges that he was beaten for an absolutely impermissible reason: to coerce an incriminating statement. It has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution. *See, e.g., Adamson v. California*, 332 U.S. 46, 54, 67 S.Ct. 1672, 1676, 91 L.Ed. 1903 (1947); *Brown v. Mississippi*, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682 (1936). The suggestion that an interrogee's constitutional rights are transgressed only if he suffers physical injury demonstrates a fundamental misconception of the fifth and fourteenth amendments, indeed, if not our system of criminal justice. *See Ware v. Reed*, 709 F.2d 345, 351 (5th Cir.1983) (constitutional violation to use any physical force against a person who is in the presence of the police for custodial interrogation and who poses no threat to their safety).

Having proven the constitutional violation, and absent immunity considerations, § 1983 requires nothing more to establish the defendants' liability. *See Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (given constitutional violation, proof of actual injury not required for due process claim to be actionable under § 1983; nominal damages can be awarded); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 2543, n. 11, 91 L.Ed.2d 249 (1986) (an award of nominal damages under § 1983 is the appropriate way to vindicate constitutional rights whose deprivation has not caused actual injury). The existence of an interrogee's physical injuries is relevant in assessing the amount of actual damages; it is not a prerequisite to suit.[1] *See, e.g., Lancaster v. Rodriguez*, 701 F.2d 864, 864–65 (10th

---

1. In the absence of proof of actual damage, Gray may only be entitled to nominal damages. *See, e.g., Hunter v. Auger*, 672 F.2d 668, 677 (8th Cir.1982) (strip searches violated prison visitors' fourth amendment rights but facts of case do not justify an award of more than nominal damages in their § 1983 action); *cf. Joseph v. Rowlen*, 425 F.2d 1010, 1012 (7th Cir.1970) (false arrest victim was successful in § 1983 action establishing police officer's liability, but jury is entitled to award "no damages").

Cir.) (§ 1983 plaintiff who proved eighth amendment violation only entitled to nominal damages when he was unable to show any actual injury), *cert. denied*, 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983); *Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir.1982) (same). Moreover, the plaintiff might prove actual damages even in the absence of physical injury. *See Stachura*, 477 U.S. at 307, 106 S.Ct. at 2543 (compensatory damages under § 1983 may be based on injuries such as "personal humiliation" and "mental anguish and suffering").

In *Duncan v. Nelson*, 466 F.2d 939 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 175, 34 L.Ed.2d 152 (1972), which involved a § 1983 action based on police extraction of an involuntary confession, the Seventh Circuit said, "we see no reason in either logic or experience to require the presence of physical violence as a necessary prerequisite to suit under § 1983." *Id.* at 945 In support of its position, the court wrote, "Justice Harlan in his concurrence in *Monroe v. Pape*, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ], recognized the possibility that psychological coercion leading to a confession could constitute damages under § 1983, by using it as an example of an action under § 1983 which would not ordinarily fulfill the requirements of a common law tort." 466 F.2d at 945 (citing *Monroe*, 365 U.S. at 196 n. 5, 81 S.Ct. at 488 n. 5 (Harlan, J., concurring)).

In support of his conclusion that the existence of serious injury is an essential element of Gray's claim, the magistrate judge relied on our decisions in *Pressly v.*

*Gregory*, 831 F.2d 514 (4th Cir.1987), and *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988). Those decisions, however, relate to situations in which a court must determine the underlying constitutionality of force by weighing the reason for its application against the amount of force applied. They are not cases, such as the one here, in which the alleged use of force was unjustified and, unquestionably, unconstitutional.[2]

We hold that the existence of physical injury is not an essential element of a § 1983 claim when a person during custodial interrogation is beaten or psychologically intimidated in a manner equivalent to beating. *See Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir.), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985) (finding an actionable § 1983 claim for extracting an involuntary confession by coercion "notwithstanding the coercion is psychological rather than physical"). It would be enough if Gray showed that he was beaten or sufficiently threatened, even if that did not result in any outward or inward manifestations of harm. Summary judgment in favor of the police officers cannot be affirmed on the basis of the magistrate judge's conclusion, whether or not correct, that the existence of serious physical injury was not in genuine dispute.[3]

### B.

The question of "serious injury" does, however, arise in the context of the alleged deprivation of medical needs. A claim against Cartner can only be made out if he was deliberately indifferent to *serious*

---

**2.** The magistrate judge also cited *Mark v. Caldwell*, 754 F.2d 1260 (5th Cir.), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985), in support of his conclusion. In *Mark*, the Fifth Circuit reiterated its doctrine that "[t]o merit redress under [§ 1983, an] officer's conduct must have been such that it 'caused severe injuries, was grossly disproportionate to the need for action, and was inspired by malice.'" 754 F.2d at 1261 (citing *Shillingford v. Holmes*, 634 F.2d 263, 264 (5th Cir.1981)).

Aside from the question of whether the *Shillingford* doctrine is followed by any other circuit, even the Fifth Circuit has noted its inapplicability to a case such as the one here. In *Ware v. Reed*, 709 F.2d 345 (5th Cir.1983), the court noted that an analytical distinction should be

made between "the use of force in the apprehension or detention of a suspect and the use of force in interrogations." *Id.* at 351. The *Ware* court held the *Shillingford* doctrine inapplicable because "during interrogation no physical force is constitutionally permissible." *Id.* The magistrate judge, in relying on *Mark v. Caldwell*, overlooked the critical distinction enunciated in *Ware*.

**3.** The case resolves itself into numerous credibility determinations arising from the sharply conflicting testimony. Gray's version may not be believed. However, belief or nonbelief is a function of the finder of fact, not of the judge or magistrate judge. *See infra* Part III.

medical needs of Gray, who was a pretrial detainee. *See Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988). The conclusion that Gray did not appear to be seriously injured, whether or not he was injured, becomes dispositive as to the case against Cartner. Furthermore, Gray has failed to contradict Cartner's absence from the jail, confirmed by jail records, on December 14, the date of the second interrogation. Accordingly, we affirm the district court's grant of summary judgment as to Cartner.

### III.

Even though the magistrate judge incorrectly reasoned that serious physical injury was an essential element of Gray's claim, summary judgment in favor of the three police officers might yet be affirmed if we concluded that, notwithstanding the magistrate judge's and the district court's error, Gray has failed to show that there is a genuine issue of material fact as to whether he was beaten or threatened at all. One might argue that Gray's case is so unbelievable, it cannot be true and no reasonable jury could return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

For example, Hines, the only supporting witness and a fellow inmate at Central Prison, lacks credibility because he cannot identify the person for whom he posted bail when visiting the jail. Two other inmates have sworn that Gray attempted to get them to perjure themselves. In addition, although Gray asserts that he was severely injured, no one, save Hines, claims to have seen any of his injuries following the interrogations.

But Rule 56(c) of the Federal Rules of Civil Procedure and *Anderson v. Liberty Lobby* provide no room for us to affirm the district court's grant of summary judgment. Only four people know what occurred inside the interrogation room: Gray and the three police officers. While the officers steadfastly deny any wrongdoing, Gray has specifically alleged a course of conduct that is, beyond doubt, unconstitutional.

It is not our job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510 (at summary judgment stage, it is not for the judge to weigh the evidence). Those tasks are for the jury. Under *Liberty Lobby,* a court should consider only whether there is a genuine issue for trial. *Id.* If the nonmovant's evidence fails to put a material fact in dispute or is not significantly probative, then summary judgment is proper. *Id.* at 249–50, 106 S.Ct. at 2510–11.

Here, Gray's own deposition testimony puts into issue whether the police officers in fact beat him. And, of course, such testimony is significantly probative; if believed by the jury, the testimony is dispositive. Whether or not Gray's testimony should be believed is a credibility determination that is not for us to make. Summary judgment in favor of the police officers was improper.[4]

Accordingly, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

4. Defendants also contend on appeal that, even if Gray has made out a § 1983 claim, he is not entitled to compensatory damages and they are entitled to qualified immunity. Neither of these issues was presented to the district court. The district court's judgment in favor of the defendants is based solely on the magistrate judge's conclusion that Gray failed to provide evidence of serious physical injury; it would be inappropriate for us to address an altogether different basis for dismissal. In any event, qualified immunity for the police officers on Gray's claims seems pretty far-fetched: beating and threatening a person during custodial interrogation seems to violate "clearly established" constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).