27 F.3d 562
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald BISHOP, Plaintiff-Appellant,
v.
Nova L. ANDREWS; Mason Waters; Galvin Ballard; Marvin
Printz; R.Rosenberry; B.L.Souders; Earlj.
Whisner; D.K. Horning; Daviss.
Ardinger; Ellis Williams,
Defendants-Appellees.
 No. 93-7203.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 19, 1994.
Decided: June 23, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-93-1186-S)
 Ronald Bishop, Appellant Pro Se.
 Glenn William Bell, Office of the Attorney General of Maryland, Baltimore, Maryland, for Appellees.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WILKINS and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald Bishop appeals from a district court order that granted summary judgment to the Defendants in his 42 U.S.C.Sec. 1983 (1988) action. The court stated in its opinion that it granted summary judgment to the Defendants because Bishop failed to submit sworn or verified proof in response to the summary judgment motion and because it found Bishop's claim that the Defendants used excessive force against him during a prison disturbance meritless. Bishop also raised claims concerning deliberate indifference to serious medical needs and the circumstances surrounding his loss of good time credit and his placement on administrative segregation, and the Defendants responded to those claims in their motion for summary judgment. The district court, however, did not specifically discuss those claims in its opinion. Nonetheless, we find that the court properly granted the Defendants' motion for summary judgment on those issues, and we affirm that aspect of the district court's order. Because Bishop in fact submitted a sworn affidavit with his original complaint which was filed in the district court and because there remain genuine issues of fact concerning the use of excessive force against him during the prison disturbance, we vacate that portion of the district court's order that granted summary judgment to the Defendants on that issue and remand the case for further proceedings on Bishop's excessive force claim.
 
 
 2
 Bishop was an inmate in punitive segregation at the Maryland Correctional Institution at Hagerstown on May 25, 1991, when a major disturbance among the inmates occurred. In the course of the disturbance, Bishop alleges that a correctional officer shot him in the right shoulder with live ammunition. He continues that he was shot while engaged in "passive conversation" and that his injuries went untreated for a lengthy period of time. He also alleges that he was improperly deprived of good conduct time and placed on administrative segregation.
 
 
 3
 Bishop's first complaint is stamped filed in the district court on April 26, 1993. Bishop named eighteen defendants in the four-page document and attached a three-page "Affidavit in Support of Claims" which bears his signature. Bishop stated at the end of that document that he "affirm[ed] under the penalties of perjury that the above is true and correct to the best of my knowledge and beliefs." This is the only document from Bishop that is sworn or verified.
 
 
 4
 Three days after Bishop filed his complaint, the district court issued an order in which it noted that it had instructed Bishop in another action that he could file a complaint naming only a "reasonable number" of defendants and asserting "a reasonable number of short, plain, and factual allegations." The court instructed Bishop that he was limited to two single-spaced, typed pages of allegations and ten defendants. The court also noted in the order that Bishop had filed a "lengthy affidavit" with his complaint and that "[a]ffidavits are not pleadings or appropriate accompaniments to a complaint under the Civil Rules." The court gave Bishop twenty-one days to file a complaint "without affidavit" or risk dismissal of the action. The court stated that the second document would be "treated as an amended complaint." Bishop filed another complaint in compliance with the district court's order. Bishop signed the document, but it was not sworn; neither did it have the affidavit attached. The court accepted the complaint and docketed it as "Plaintiff's Supplement per Court Order."
 
 
 5
 It is unclear which document the court served on the Defendants. In their motion for summary judgment, the Defendants refer to Bishop's "fifty (50) sentence statement of claim asserting that Defendants used excessive force upon him." Bishop's first complaint was comprised of fifty enumerated sentences; his second complaint contained thirty-eight enumerated sentences. Thus, it appears that the Defendants received a copy of Bishop's first complaint. They filed an answer in which they asserted a qualified immunity defense and a motion for summary judgment with affidavits and other evidence attached. The court issued Bishop appropriate notice and informed him that he could file in opposition
 
 
 6
 ... any relevant material, including affidavits or statements under oath or affirmation, or subject to the penalties of per jury, admitting, contradicting, or explaining the facts and matters asserted in the motion.
 
 
 7
 The court continued that if he did not file an appropriate response or if the response failed to "show by affidavit or statement under penalties of perjury" that there was a genuine issue of material fact, summary judgment could be entered against him without further notice. Bishop filed a response in which he alleged that there were issues of fact that precluded summary judgment, but the document was not sworn. In granting the Defendants' motion for summary judgment, the district court specifically noted:
 
 
 8
 The plaintiff has failed to submit any affidavit proof, or any statement under penalties of perjury, generating a genuine dispute of material fact, as required by Fed.R.Civ.P. 56 as interpreted in Celotex v. Catrett, 477 U.S. 317 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Rather, his opposition to defendants' summary judgment motion is an argumentative response insufficient under Celotex.
 
 
 9
 This Court reviews a grant of summary judgment de novo. Farwell v. Un, 902 F.2d 282, 287 (4th Cir.1990). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 322 (quoting Fed.R.Civ.P. 56(c)). In determining whether this showing has been made, a court must assess the factual evidence and all inferences to be drawn therefrom in a light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). Summary judgment is a drastic remedy and should not be granted unless "it is perfectly clear that there are no genuine issues of material fact." Ballinger v. North Carolina Agricultural Extension Serv., 815 F.2d 1001, 1004-05 (4th Cir.), cert. denied, 484 U.S. 897 (1987).
 
 
 10
 The extent to which the district court considered the sworn affidavit Bishop attached to his first complaint, the only sworn document he submitted, is unclear. When the court ordered Bishop to file a "re duced" complaint, it specifically ordered him to submit a complaint without an affidavit. When Bishop complied with that order, the court accepted the second complaint and docketed it as a "supplement." In addition, the Defendants' reference in their motion for summary judgment to a complaint containing fifty enumerated sentences indicates that they were served with a copy of the first complaint.
 
 
 11
 Even though Bishop did not comply with the court's later instruction that he was required to submit sworn, verified evidence in opposition to the summary judgment motion, the record discloses that the court had such sworn evidence from Bishop before it. Even though the court ordered Bishop to file a second complaint, it filed Bishop's original complaint with the sworn affidavit in the record; it did not return the documents to him. It also appears that the court served the Defendants with a copy of the first complaint, not just the second one. In addition, the court listed the second complaint on its docket sheet as a "supplement."
 
 
 12
 We find that Bishop, a pro se litigant, conceivably could have been confused by the court's orders. Though the court informed Bishop that he should file sworn, verified evidence in response to the summary judgment motion, it had informed him in an earlier order that the sworn affidavit he previously submitted with his first complaint was not appropriate. The court nonetheless filed the affidavit in the record. Bishop stated in a motion for appointment of counsel which the court denied that he sought discovery "to investigate defendant's records and documented information regarding [his] claims, and subsequently, interview crucial witnesses." Thus, it appears that Bishop attempted to comply with the court's orders and did not intend to present false evidence or confuse the issues. We find that it was improper for the court to accept and file Bishop's sworn affidavit and then dismiss his complaint on the basis that he did not later file such sworn or verified evidence. We therefore vacate that portion of the district court's order and remand the case for the court to consider the sworn affidavit.
 
 
 13
 When we then construe the evidence contained in the record in the light most favorable to Bishop, as we must, see Ross, 759 F.2d at 364, we find that there are issues of material fact in relation to Bishop's excessive force claim that preclude summary judgment.
 
 
 14
 Excessive force violates due process if it is intended as punishment. United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir.1990), cert. denied, 498 U.S. 1049 (1991). Punitive intent may be inferred when the force used was not reasonably related to any legitimate nonpunitive objective; a four-part test is used in making this determination:
 
 
 15
 (1) The need for the application of force; (2) The amount of force used; (3) The extent of injury inflicted; and (4) Whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.
 
 
 16
 Id. at 789; see also Wilson v. Seiter, 501 U.S. 294 (1991) (wantonness of officers' conduct is judged in light of constraints and pressures under which they act). Where force is used in the course of a prison disturbance, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)). Such factors as the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted are relevant to the ultimate determination. Gray v. Spillman, 925 F.2d 90, 94 (4th Cir.1991). The injury need not be significant to be violative of the Eighth Amendment, but something more than de minimas injury is required. Hudson v. McMillan, 60 U.S.L.W. 4151, 4153-54 (U.S.1992).
 
 
 17
 It is undisputed that Bishop was the victim of the application of force in the course of a serious prison riot, therefore there was clearly a need for the application of force to end the disturbance. The amount of force used by the Defendants is not as easily resolved. It is unclear from the record whether the correctional officers used live ammunition against the inmates in the course of the riot. The Defendants state in their affidavits that certain "M-37 rifles were equiped [sic] to fire multiple wood or rubber projectiles ... which are designed for crowd dispersement." One affidavit also states that the officers were also equipped with "one or two shotguns" but "[n]o shotguns were uti lized." In the same affidavit, the officer states, "[a]gain, the shotguns were utilized and we gained control of the situation." (emphasis added). The Defendants state in their motion for summary judgment that "[t]he infraction notice indicates that Bishop was treated at the institutional hospital for a gun shot wound to the right and left foot."
 
 
 18
 As the Defendants note in their motion for summary judgment, the medical records concerning Bishop's injuries are not clear. There is no record of Bishop receiving any treatment at all for a gunshot wound or for any injury to his feet. There is a record of treatment for "joint pain" and an "open wound" on Bishop's right deltoid on June 20, 1991, nearly one month after the riot.
 
 
 19
 Bishop acknowledges in his sworn affidavit that he was aware of a "disturbance" in the prison. He also admits that his "door was opened," that he exited his cell, and that he left the tier in which he was held. Bishop alleges in the affidavit that he "got shot in [his] right shoulder." He continues that he was bleeding and sought help from fellow inmates. He continues that he was later transported to the hospital and that the report of his institutional infraction that stated he was shot in his right and left foot was "false."
 
 
 20
 Bishop states in his second, unsworn complaint that he was "shot." Though he does not specify the location of his injury, he states unequivocally that he "was not shot in the feet." Bishop states in his response to the Defendants' motion for summary judgment (again, unsworn) that "the shooting of the Plaintiff is undisputed as to the foot/and shoulder." He continues that "he was shot with a shotgun with live ammonition [sic] in the right shoulder with deadly intent." Throughout his response, Bishop maintains that the Defendants used "deadly force" and that he was "shot in the shoulder."
 
 
 21
 When the record is considered in the light most favorable to Bishop, there is a genuine issue of fact concerning the amount of force used even if the court considers only the allegations in Bishop's sworn affidavit. Even if we disregard all of Bishop's factual allegations, the Defendants' own submissions create an issue of fact on this issue. The medical records submitted by the Defendants contain a notation of treatment for an "open wound" on Bishop's right deltoid that tends to support his assertion that he was shot, or at least wounded, in the right shoulder. The Defendants' own affidavits are unclear about the extent of deadly force used and while they certainly establish the general urgency of a prison riot situation, they contain no specific information at all concerning the force applied against Bishop.
 
 
 22
 As for the extent of injury inflicted, there is a genuine dispute of fact as to that issue as well. As noted, Bishop unequivocally maintains in his affidavit that he was shot in the shoulder. The Defendants admit in their motion for summary judgment that the medical records "are rather inconclusive." A correctional officer stated on Bishop's infraction report that Bishop was treated at a hospital "for a gunshot wound to the right and left foot." It continues that Bishop received the wound from staff that was attempting to end the disturbance. As the Defendants acknowledge in their motion, there is no medical record of Bishop receiving treatment for such a wound. As previously noted, however, there is a medical record of Bishop receiving treatment for an "open wound" in his right deltoid. Construing this evidence in the light most favorable to Bishop, there is a genuine issue of fact concerning the extent of his injury. Even if the Court does not consider any of the factual information supplied by Bishop himself, the Defendants virtually admit that their own sworn and verified information creates a factual issue on the nature of Bishop's injury.
 
 
 23
 There is also a genuine issue of fact concerning whether the force applied was in a good faith effort to maintain and restore discipline or whether it was applied maliciously. As previously noted, the Defendants' affidavits establish that the application of force was generally required to end the prison riot. There is absolutely no information, however, concerning the specific application of force to Bishop. Bishop does not allege in his sworn affidavit the circumstances surrounding his shooting.* Therefore, construing the record in the light most favorable to Bishop, there remains a genuine issue of material fact concerning whether the force was applied against Bishop in good faith in order to maintain and restore discipline or whether it was applied maliciously and sadistically.
 
 
 24
 The district court stated in its order that "defendants' properly supported motion shows that force was not wantonly applied to plaintiff at random, but, rather was used only as necessary to quell the riot." As noted, when the record is construed in the light most favorable to Bishop, there is a genuine issue of fact on this point. For these reasons, we vacate the district court's order that granted summary judgment to the Defendants on the excessive force issue and remand that portion of the case for further proceedings consistent with this opinion.
 
 
 25
 Bishop alleged in both complaints that the Defendants denied him appropriate medical treatment for his injuries, and the Defendants addressed the claim in their pleadings. The district court, however, did not discuss the issue in its opinion. In order to state an Eighth Amendment claim for inadequate medical care, there must have been deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Courts use a totality of the circumstances test to decide if there was deliberate indifference to a serious medical need. Parrish v. Johnson, 800 F.2d 600, 606 (6th Cir.1986). Mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-06. Nor is a claim stated by disagreements between inmate and physician, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975), unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841 (4th Cir.1985).
 
 
 26
 We find that when the record is construed in the light most favorable to Bishop, summary judgment was appropriate. Bishop admits that he received treatment at a hospital for his injuries and only implies that he disagreed with the treatment he received. The record also discloses that he received some follow-up treatment and that Bishop now considers himself "alright." We therefore affirm summary judgment for the Defendants on this issue.
 
 
 27
 Bishop also complained about the loss of good time credit and his placement on administrative segregation for institutional rule violations during the prison riot. Though the Defendants responded to this issue, the district court did not specifically discuss it in its opinion.
 
 
 28
 When the loss of statutory good-time credits or solitary confinement is at issue, the inmate is entitled to certain procedural safeguards:
 
 
 29
 (1) Advance written notice of the charges at least twentyfour hours in advance of the hearing; (2) Written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) The right to call witnesses and present evidence in his defense.
 
 
 30
 Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). When construed in the light most favorable to Bishop, the evidence establishes that Bishop received all of the process that was due him under Wolff. We therefore find that summary judgment for the Defendants on this claim was also appropriate and we affirm that aspect of the district court's order.
 
 
 31
 Though the Defendants asserted a qualified immunity defense, the district court did not address that issue. Public officials are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982). Determining the applicability of the defense requires three discrete determinations:
 
 
 32
 (1) Identification of the specific right allegedly violated; (2) Determining whether at the time of the alleged violation the right was clearly established; and (3) If so, whether a reasonable person in the officer's position would have known that doing what he did would violate that right.
 
 
 33
 Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992). In evaluating an officer's conduct, the "reasonableness of their response must be gauged against the reasonableness of their perceptions, not against what may later be found to have taken place." Gooden v. Howard County, 954 F.2d 960, 965 (4th Cir.1992) (en banc). The question ultimately turns on whether a reasonable officer could have believed that the challenged conduct was lawful. Id. The only issue in Bishop's complaint that survives summary judgment on the merits is his claim that he was the victim of the unwarranted use of excessive force, but the current record is insufficient to assess the applicability of a qualified immunity defense to that issue. Bishop has clearly alleged that the Defendants violated his right to be free of cruel and unusual punishment under the Eighth Amendment when a correctional officer shot him during a prison riot. Such a right was clearly established as to alert a reasonable officer to its constitutional parameters. The record, however, is insufficient to assess whether a reasonable officer in the position of the officer who shot Bishop could have believed that his conduct was lawful.
 
 
 34
 The undisputed affidavits the Defendants submitted with their summary judgment motion clearly establish that a riot of emergency proportions occurred on the day Bishop was shot. The officers state that inmates possessed keys and were unlocking cells in administrative and protective segregation areas where some disruptive inmates were housed. Bishop himself admits that the door to his cell in administrative segregation "was opened" and that he left his cell in the segregation tier. The inmates set fires, flooded other areas, and armed themselves with various objects to use as weapons, which they used to inflict serious injuries on some correctional officers. One correctional officer stated in Bishop's "Notice of Infraction or Incident" that "only those inmates that were involved in the riot, assaulting staff, other inmates, or rushing in mass to responding staff were fired upon by the responding officers." As previously noted, however, the Defendants did not provide any specific information regarding the encounter with Bishop. Bishop alleges that he remained "passive" during the disturbance, even though he acknowledges that he left his cell.
 
 
 35
 Since there remain unresolved issues of fact concerning the amount of force used, the extent of injury, and whether the force was applied to legitimately quell the riot or maliciously to harm Bishop, the current record is insufficient to ascertain whether the Defendants are shielded by qualified immunity. After further factfinding upon remand, the district court should ascertain whether a reasonable officer could have believed the use of force against Bishop was lawful under the circumstances of the encounter.
 
 
 36
 For the reasons discussed above, we vacate the district court's order granting the Defendants' summary judgment motion as to Bish op's claim that he was the victim of excessive force at the hands of the Defendants and remand the case for further proceedings on that issue. We instruct the district court to consider the sworn affidavit Bishop submitted with his original complaint in its assessment of the merits of this claim. We affirm summary judgment in favor of the Defendants as to all of Bishop's other claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 
 *
 Bishop alleges in his unsworn response to the summary judgment motion that the shooting "occurred without provocation." (R. 18). He continues in that pleading that he "was simply out of bounds with no intentions [sic] of taking part in the alleged riot." (Id.)