MICHAEL, Circuit Judge,
dissenting:
The record does not support the majority’s conclusion that Riley was not being questioned when a detective stuck a pen up Riley’s nose, threatened to rip it open, and then slapped him. As a result, a standard requiring more than de minimis injury cannot be invoked to bar Riley’s claim. For “the existence of physical injury is not an essential element of a § 1983 claim when a person during custodial interrogation is beaten or psychologically intimidated in a manner equivalent to beating.” Gray v. Spillman, 925 F.2d 90, 94 (4th Cir.1991). Because Riley’s claim fits squarely under Gray, I respectfully dissent.
I.
The majority begins its analysis by deciding “whether Riley’s claims are governed by the Fourth, Fifth, Eighth, or Fourteenth Amendment.” Ante at 1161. Characterizing Riley’s complaint as an excessive force claim by a pretrial detainee, the majority then proceeds to find the Fourth, Fifth, and Eighth Amendments to be inapplicable. Ultimately, the majority concludes that Riley’s claim is governed by the Due Process Clause of the Fourteenth Amendment under the standard set forth in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
Bell, however, did not deal with the protection the Due Process Clause affords to a pretrial detainee who is being interrogated. Instead, Bell examined conditions and restrictions of pretrial detention alleged to be unconstitutional, such as “double bunking” (two inmates in a room designed for one), a “publisher only” rule (inmates only allowed hardcover books mailed directly from the publisher or bookstore), and the practice of body cavity searches following contact visits. See id. at 541-43, 548-60, 99 S.Ct. at 1875-76, 1878-85. According to Bell the “proper inquiry” for evaluating these claims about “conditions or restrictions of pretrial detention” is whether they “amount to punishment of the detainee.” Id. at 535, 99 S.Ct. at 1872.
Nothing in Bell restricts the actual right upheld in Gray v. Spillman — namely, the right not to be “beat[en] and threaten[ed] ... in the course of custodial interrogation.” Gray, 925 F.2d at, 93. This right, like the protections afforded to pretrial detainees, stems from the Due Process Clause. However, this right to be free from physical violence and coercion during custodial interrogation affords more protection than the general due process right (considered in Bell) relating to conditions of pretrial detention. The right not to be beaten during custodial interrogation gets closer to the core of the liberty interest and thus warrants more stringent standards.
Two wrong turns by the majority have led to its failure to recognize that the due process right confirmed in Gray forms the basis for a § 1983 claim by Riley. First, the majority believes that any right to be free from coercion during interrogation can come only from the Fifth Amendment’s protection *1170 against self-incrimination. Since Riley does not appear to have made any incriminating statements, the majority concludes that the Fifth Amendment is inapplicable to his claim. Second, the majority concludes that the physical abuse and threats alleged by Riley did not take place during a custodial interrogation. I will explain how the majority got off course.
A.
The majority does not dispute that the Constitution protects individuals against coercion during an interrogation. However, it only discusses this protection in the context of the Fifth Amendment right against self-incrimination. See U.S. Const, amend. V (“No person ... shall be compeled in any criminal case to be a witness against him-self_”). In discussing this right, the majority contends that the Fifth Amendment is only violated when a compelled statement is actually used in a criminal proceeding. Since Riley does not claim to have given a statement to the interrogating officers, the majority reasons, he cannot bring a § 1983 claim under the Fifth Amendment.
The majority does have some support for its argument that actions can be brought under the Self-Incrimination Clause only if a confession has been obtained and offered in court. See, e.g., Wilkins v. May, 872 F.2d 190, 194 (7th Cir.1989) (noting that it would be “odd” to find a violation of the Self-Incrimination Clause if a confession was not obtained and then used in a criminal case). The majority is wrong, however, if it means to suggest that violence and threats during custodial interrogation are unconstitutional only if a confession is wrung out and subsequently used. To so hold would overrule Gray, since in Gray the plaintiff’s confession was not used at his criminal trial. See Gray, 925 F.2d at 91. More importantly, such a holding would be based on an erroneous belief that constitutional protections against coercion during interrogation stem only from the Self-Incrimination Clause.
As this court said in Gray, “[i]t has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution.” Id. at 93. Although Gray does not specify the exact source of its protections for custodial interrogation, it has clearly based them on the Due Process Clause. See Wiley v. Doory, 14 F.3d 993, 998 n. 11 (4th Cir.1994) (“Gray relies on cases involving violations of the Due Process Clause rather than the Self-Incrimination Clause.”). In Adamson v. California, 332 U.S. 46, 54, 67 S.Ct. 1672, 1677, 91 L.Ed. 1903 (1947), which Gray cites for support, the Supreme Court said that “[t]he due process clause forbids compulsion to testify by fear of hurt, torture or exhaustion.” Later eases have confirmed that “[t]he due process violation caused by coercive behavior of law-enforcement officers in pursuit of a confession is complete with the coercive behavior itself.” Cooper v. Dupnik, 963 F.2d 1220, 1244-45 (9th Cir.1992) (en banc). For example, in Wilkins v. May, 872 F.2d 190 (7th Cir.1989), the plaintiff brought a Bivens action in which he claimed that two federal agents had interrogated him while pointing a gun at his head. In determining whether “brutal police conduct in custodial interrogation states a constitutional claim,” the court expressed doubt as to whether the Self-Incrimination Clause was violated. Id. at 194. The court did find, however, that the plaintiff stated a claim under the Due Process Clause. See id. at 195 (“It is for the trier of fact to decide whether a particular incident involving interrogation at gunpoint is so terrifying in the circumstances as to constitute a deprivation of liberty within the meaning of the due process clause.”).
Moreover, even some who may agree with the majority’s limitation on actions based on the right against self-incrimination have noted that the Due Process Clause protects against coercion alone. See Weaver v. Brenner, 40 F.3d 527, 534 (2d Cir.1994) (noting that “[t]he right of a citizen to be free from[police coercion during custodial interrogation] is guaranteed by the Due Process Clause of the Fourteenth Amendment”); Cooper, 963 F.2d at 1253 (Brunetti, J., dissenting) (since the police interrogation techniques “involved no physical abuse or threats of physical abuse,” the plaintiff had not “stated a valid § 1983 claim under a due process *1171 theory”). Indeed, to hold otherwise would make physical force constitutionally permissible unless the suspect actually confessed and the confession was later used in a criminal proceeding. That cannot be the law. See Cooper v. Dupnik, 924 F.2d 1520, 1538 (9th Cir.1991) (Noonan, J., concurring in part and dissenting in part), rev’d en banc, 963 F.2d 1220 (9th Cir.1992).
B.
I recognize, of course, that Detective Dor-ton’s assault on Riley had to occur during interrogation for Riley to take advantage of the special due process protection that prohibits the police from resorting to violence during custodial questioning. The majority concludes that “Riley’s time at the Henrico County Public Safety Building was not devoted to any questioning about his offenses but rather to routine criminal processing.” Ante at 1165. The circumstances and the summary judgment record simply do not support this conclusion.*
Riley had just been arrested on warrants charging him with abduction, rape, and sodomy — crimes for which corroborating witnesses are often not available. This is exactly the circumstance where the police would be expected to question the suspect, and the undisputed summary judgment record compels the conclusion that Riley was indeed questioned.
First, it appears that Detective Dorton attempted to get Riley to sign a waiver of his right to a lawyer during interrogation. The majority points out that Riley was asked to sign a waiver consenting to DNA testing, but Dorton also wanted Riley to sign a “waiver to talk to [Dorton] without the presence of an attorney.” J.A. 250. According to Riley, Dorton offered to buy him a meal “to get me to sign a waiver, to talk to him.” J.A. 250. Second, in describing the events that led up to the assault, Riley testified as follows in his deposition:
Then they started up again during his interrogation, and he [Detective Dorton] was asking me, you know, you know, different things like my fat sister, is she a whore, and things like that, you know, and just trying to get me to break[ ]down.
J.A. 266. The use of insults is a well-known method of interrogation aimed at getting the suspect to “break down.” See James Becket, Barbarism in Greece 112 (1970) (describing an interrogation technique in which “the prisoner is verbally assaulted by obscenities, lies, and threats,” such as “how is it with a mother who is a whore?”). Similarly, Riley states that after the assault, “Detective Dorton left the room, and then Detective Ross started trying to play — they tried to play the ‘good eop/bad cop’ routine.” J.A. 276. This routine, too, is a standard interrogation technique. See Miranda v. Arizona, 384 U.S. 436, 452, 86 S.Ct. 1602, 1616, 16 L.Ed.2d 694 (1966) (“One ploy often used has been termed the ‘friendly-unfriendly’ or the ‘Mutt and Jeff act_”). Finally, there is an additional indication in Riley’s deposition that the officers were looking to get a statement from him. In response to a question whether the officers had denied him the right to counsel, Riley responded:
I didn’t make any statements, even though I understand that through my attomey[’]s motion for diseovery[in the criminal case] that Officer Dorton claims that I made a statement, but I did not make any statements.
J.A. 275.
Throughout the proceedings in the district court, where Riley appeared pro se and prepared his own papers, he continually described the underlying encounter as an “interrogation.” See Plaintiffs Motion at J.A. 179 (“The assault occured [sic] during interrogation....”); Plaintiffs Memorandum in Support of Plaintiffs Answer to the Defendant’s Motion to Dismiss at J.A. 228-29 (noting that “the assault oeeurr[ed] during the interrogation process”); Plaintiffs Affidavit at J.A. 232 (describing the underlying events as taking place “[d]uring the interrogation process”); Plaintiffs Deposition at J.A. 266 (“Then they started up again during his in- *1172 terrogation_”). Detective Dorton never challenged the “interrogation” description in district court.
Because of Detective Dorton’s acquiescence on this point, the majority places too much weight on Riley’s “fail[ure] to identify any words or conduct of the officers which were ‘reasonably likely to elicit an incriminating response.’ ” Ante at 1165 (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980)). As noted, Detective Dorton did not once dispute Riley’s assertion that the incident took place during interrogation. In particular, Riley was not challenged on this in his deposition, and Detective Dorton did not offer any evidence to contradict Riley’s numerous statements that he was being interrogated. If the detective had offered something to indicate that there was no interrogation, then Riley might have been compelled to respond with more specific facts. As things stand, what Riley did offer is uncontradicted, and it is sufficient to establish that the incident occurred during interrogation. The majority’s effort to construct a different picture is simply contrary to the record.
Indeed, the majority’s refusal to recognize this as a custodial interrogation ease is causing it needless worry. Returning Riley’s claim for trial would not mean that “every ‘least touching’ of a pretrial detainee would give rise to a section 1983 action under the Fourteenth Amendment.” Ante at 1167. The reason is simple: there is a fundamental difference between the use of force in interrogation and the use of force to maintain good order and discipline among those in jail awaiting trial. No one is against jailors being able to do their jobs as custodians without the burden of frivolous lawsuits. The only thing I am against here is prohibited by a longstanding rule: when a jailor or custodian switches his role to investigator and begins interrogating a detainee, no physical force is constitutionally permissible. See Ware v. Reed, 709 F.2d 345, 351 (5th Cir.1983). Applying this rule, which is already in the books, will not open the floodgates.
II.
Because we must accept for summary judgment purposes that Riley was being interrogated at the time of the alleged assault, he should be allowed to bring his § 1983 claim under the Due Process Clause’s specific protections for interrogatees. The rule set forth in Gray is that “the existence of physical injury is not an essential element of a § 1983 claim when a person during custodial interrogation is beaten or psychologically intimidated in a manner equivalent to beating.” Gray, 925 F.2d at 94. Thus, Riley’s claim should survive summary judgment if he has proffered evidence that “he was beaten or sufficiently threatened, even if that did not result in any outward or inward manifestations of harm.” Id. In his unchallenged deposition testimony and affidavits, Riley says that Detective Dorton repeatedly threatened and insulted him, stuck a pen up his nose, threatened to rip it open, and slapped him hard, causing his head to snap to the side and raising welts on his face. Because these abusive acts, which had nothing to do with maintaining order in the police station, took place during custodial interrogation, they provide the basis for a due process claim that survives summary judgment.
The majority erroneously applies a de minimis injury standard to Riley’s claim of unjustified force during custodial interrogation. This is the wrong standard because the due process violation was complete the minute Detective Dorton resorted to physical abuse during the questioning. Again, a detainee has an actionable right to be free from brutality while police seek a confession. Thus, when violence is used in custodial interrogation, the severity of a § 1983 plaintiffs injuries is relevant only to the question of damages, and a plaintiff may be awarded nominal damages and attorney’s fees even if his injuries are not serious. Id. at 93-94 & n. 1.
I respectfully dissent because Riley does have a claim. Judge K.K. HALL, Judge MURNAGHAN, Judge ERVIN, and Judge DIANA GRIBBON MOTZ join in this opinion.

 The majority seems to forget that on appeal from summary judgment we must view "the facts and inferences in the light most favorable to the non-moving party,” i.e., Riley. Donmar Enters., Inc. v. Southern Nat’l Bank of N.C., 64 F.3d 944, 946 (4th Cir.1995).